UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| PAUL MICHAEL BARRY, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 2:14-cv-00527-JDL |
| | ) |
| CORIZON, INC., et al., | ) |
| | ) |
| Defendants | ) |

## RECOMMENDED DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

In this action, Plaintiff Paul Michael Barry alleges that Defendants Corizon, Inc., Corizon employees, Cumberland County and correctional personnel at the Cumberland County Jail violated Plaintiff's constitutional rights when they failed to provide him with necessary medical care. The matter is before the Court on the Corizon Defendants' Motion for Summary Judgment (ECF No. 108), the County Defendants' Motion for Summary Judgment (ECF No. 112), and Plaintiff's Cross-Motion for Summary Judgment. (ECF No. 120.)

Following a review of the pleadings and the summary judgment submissions, and after consideration of the parties' arguments, I recommend the Court grant Defendants' motions and deny Plaintiff's motion.

## BACKGROUND FACTS[1]

### A. Corizon Defendants' Statement of Facts

Plaintiff commenced this action on December 9, 2014, while he was incarcerated at the Cumberland County Jail ("CCJ"). (Corizon Defendants' Statement of Material Facts ¶ 1, ECF No. 109.) Plaintiff began his time as an inmate at the CCJ on January 16, 2014. (*Id.* ¶ 2.)

While incarcerated, Plaintiff refused treatment and medication on numerous occasions, attempted to direct his own medical care, and had many disagreements with medical professionals regarding his medical treatment. (*Id.* ¶¶ 3, 5, 6.) Plaintiff received much of his care at the CCJ from Defendant Edith Woodward, PA. Contrary to Plaintiff's allegations, Defendant Woodward attests she did not refuse to treat and care for Plaintiff, and did not fail to provide appropriate medications to Plaintiff following his return from the hospital in October 2014. (*Id.* ¶ 9.)

When Plaintiff arrived at the CCJ in January 2014, he reported that he suffered from multiple serious medical conditions, including a form of cancer, for which cancer he was scheduled to begin treatment in Florida. (*Id.* ¶ 11.) Plaintiff did not report having blood in his stool at that time. (*Id.* ¶ 12.) When Defendant Woodward examined him in January 2014, Plaintiff refused to submit to all of the requested examinations and tests. (*Id.* ¶ 13.) Defendant Woodward requested records from Dr. Mark Whiteside and Dr. Michael Jones, Plaintiff's medical providers in Key

---

[1] In support of their motions for summary judgment, Defendants filed statements of material facts setting forth the background facts upon which their motions are based. Local Rule 56 requires that factual assertions in support of or in opposition to a motion for summary judgment be set forth in a separate statement of material facts, that each factual statement be set forth in its own numbered paragraph, and that each factual statement be followed by a citation to record material that supports the statement. D. Me. Loc. R. 56(a), (b), (f). Defendants' submissions comply with the Rule. Plaintiff, however, has not provided the Court with a document that could fairly be described as a statement of material facts. Instead, Plaintiff filed a statement to which he has attached several exhibits. (ECF No. 125.) In Plaintiff's first exhibit (ECF No. 125-1), he offers the Court his view of the significance of the other exhibits (ECF Nos 125-2 – 125-11). Plaintiff also has not filed an opposing statement of material facts as required under Local Rule 56(c). Because Plaintiff has not filed an opposing statement, and because Defendants' statements are supported by record citations, the factual assertions set forth in Defendants' statement are deemed admitted. *See* D. Me. Loc. R. 56(f).

West, Florida.  (*Id.* ¶ 14.)  The records revealed that Plaintiff had not been diagnosed with all of the serious conditions he reported, but was suffering from more treatable conditions.  (*Id.* ¶¶ 15 – 19.)

On February 27, 2014, as the result of a physical examination of Plaintiff, a medical provider at the Riverview Psychiatric Hospital noted no evidence of cancer.  At that time, Plaintiff denied any hematochezia (anal bleeding), hematemesis (vomiting of blood), melena (black, tarry feces), but stated that he experienced chronic constipation which he treated with Milk of Magnesia.  (*Id.* ¶ 22.)  On July 15, 2014, Plaintiff reported that he had some Bell's Palsy symptoms, but: "Other than this I feel great.  Keeping well and fit.  It's just the Bell's Palsy."  (*Id.* ¶ 23.)

When Plaintiff complained of gastrointestinal issues, the nursing staff and Defendant Woodward evaluated and treated him for the complaints.  (*Id.* ¶ 24.)  Defendant Woodward prescribed medication such as Colace, Dulcolax, and Milk of Magnesia to treat Plaintiff's gastrointestinal symptoms.  (*Id.* ¶ 25.)

On August 28, 2014, when Defendant Woodward saw Plaintiff for complaints of lower abdominal pain and other related symptoms, she discussed a gastrointestinal consult with Plaintiff, but Plaintiff stated that he wanted to wait.  Plaintiff consented to an in-house X-ray, which Defendant Woodward ordered.  (*Id.* ¶¶ 26 – 27.)  On August 29, 2014, Defendant Woodward again discussed with Plaintiff the need for a gastrointestinal consult and possibly a colonoscopy.  Plaintiff expressed a reluctance to participate in the treatment while incarcerated; Defendant Woodward asked that he reconsider and to allow further examination. (*Id.* ¶¶ 28 – 30.)

Plaintiff submitted a request on September 21, 2014, in which he stated that he thought Defendant Woodward would set up an appointment with a gastrointestinal specialist.  (*Id.* ¶ 31.)  Defendant Woodward examined him the next day, at which time Plaintiff agreed to a

gastrointestinal consult. (*Id.* ¶ 32.) On September 26, 2014, Defendant Woodward noted in the record that Plaintiff was scheduled for a consult. (*Id.* ¶ 33.)

On October 3, 2014, before the consult was conducted, Defendant Woodward saw Plaintiff for gastrointestinal complaints. (*Id.* ¶ 34.) On October 4, 2014, Defendant Woodward reviewed Plaintiff's lab results and noted some concerning trends, and she referred Plaintiff to the CCJ site doctor. The next day, when Dr. Todd Tritch evaluated Plaintiff, Plaintiff reported that he had suffered from cramps, pain, and bloody stools for the last eight months. Based on Plaintiff's presentation and the lab results, Dr. Tritch ordered Plaintiff to be transported to the emergency room at Maine Medical Center ("MMC"). (*Id.* ¶¶ 35 – 37.)

At MMC, Plaintiff reported that he had one or two episodes of bloody stools since February 2014, with worsening symptoms since September 28, 2014. (*Id.* ¶ 38.) On October 15, 2014, an MMC oncologist informed Defendant Woodward that Plaintiff was diagnosed with B-cell lymphoma (non-Hodgkins Lymphoma), and chemotherapy would occur over six rounds every three weeks at the hospital. (*Id.* ¶ 39.) As of October 22, 2014, Plaintiff continued to refuse treatment for other conditions, stating that he believed people were trying to poison him and that a hospital nurse might be someone he previously evicted from a residence. (*Id.* ¶ 40.)

Upon Plaintiff's release from MMC and return to the CCJ on October 27, 2014, Defendant Woodward examined him, discussed with him his medical orders, and scheduled a follow-up evaluation for October 29, 2014. (*Id.* ¶ 41.) That same day, Defendant Woodward wrote a letter on Plaintiff's behalf supporting his release from the CCJ on compassionate grounds. (*Id.* ¶ 42.)

The discharge medication orders from MMC did not include a prescription for prednisone. In December 2014, when the oncologist noted that prednisone should be part of Plaintiff's

medication regimen, Defendant Woodward promptly ordered the medication be included as part of Plaintiff's treatment. (*Id.* ¶¶ 43 – 44.)

After Plaintiff's October 27, 2014, release from MMC and return to the CCJ, Defendant Woodward noted that she would substitute Tylenol 3 or 4 for Vicodin and that she could not provide Plaintiff with Rozerem, a sedative, at that time. Defendant Woodward could not provide Plaintiff with Rozerem because it was an herbal sleep aid that was unavailable at the CCJ, but there were alternative suitable medications available through mental health. Defendant Woodward prescribed Tylenol 3 or 4 instead of Vicodin, because Vicodin is a "Schedule 2" drug that is outside the scope of her practice. Defendant Woodward, therefore, referred Plaintiff to Dr. Snyder for a possible prescription for Vicodin, which Plaintiff began receiving on October 28, 2014. (*Id.* ¶¶ 45 – 48.) Plaintiff continued to be treated at the jail and by outside medical providers through January 2015. (*Id.* ¶ 49.) Plaintiff was released from CCJ on January 21, 2015. (*Id.* ¶ 50.)

*Janice Chamberland*

Defendant Janice Chamberland is a registered nurse who was the Director of Nursing at the CCJ during a portion of Plaintiff's incarceration. (*Id.* ¶ 51.) As the Director of Nursing, Defendant Chamberland did not establish the course of Plaintiff's medical care or direct his medical care. (*Id.* ¶ 52.)

Defendant Chamberland participated in the response to certain grievances filed by Plaintiff. (*Id.* ¶ 53.) In February 2014, Plaintiff complained that he was not being treated for certain conditions, although he had refused such treatment. (*Id.* ¶ 54.) After review of Plaintiff's medical records, Defendant Chamberland found no evidence that Plaintiff's medical needs had been ignored. (*Id.* ¶ 55.) Defendant Chamberland did not learn of any instances when Plaintiff's medical needs were not met. (*Id.* ¶ 56.)

*Eileen Mageary*

Defendant Eileen Mageary is also a registered nurse who was employed as the Director of Nursing at the CCJ during a portion of Plaintiff's incarceration. (*Id.* ¶ 57.) As Director of Nursing, Defendant Mageary did not establish a course of treatment for Plaintiff or decide whether to prescribe pain medication for Plaintiff. (*Id.* ¶ 58.) Defendant Mageary met with Plaintiff to ensure that his various concerns were met and to permit him the opportunity to express his concerns. (*Id.* ¶ 59.)

Defendant Mageary also attempted to address Plaintiff's medical grievances. (*Id.* ¶ 60.) In November 2014, Plaintiff complained that he needed a blood transfusion and that he was being denied medical care. (*Id.* ¶ 61.) Defendant Mageary reviewed Plaintiff's medical records, which confirmed that Plaintiff had been evaluated by his oncologist, Defendant Woodward, and another doctor, and that he had been provided medications to treat his symptoms. (*Id.* ¶ 62.) In Defendant Mageary's view, Plaintiff's course of treatment between November 2014 and his release from CCJ in January 2015 was medically-appropriate. (*Id.* ¶ 63.)

**B. County Defendants' Statement of Facts**

At all times during his incarceration at the CCJ, Plaintiff was a pretrial detainee. (Corizon Defendants' Statement of Material Facts ¶ 2, ECF No. 113.) Major John Costello is the Jail Administrator for the CCJ. (*Id.* ¶ 3.) From January 2014 to January 2015, Cumberland County contracted with Defendant Corizon, LLC, to provide medical services at the CCJ. (*Id.* ¶ 4.) Major Costello had no direct or personal involvement regarding Plaintiff's access to medical services or in the delivery of medical services to Plaintiff while he was at the CCJ. (*Id.* ¶ 7.)

One of Cumberland County's policies requires employees working at the jail to defer to the medical provider regarding the health care diagnosis and treatment of inmates. (*Id.* ¶ 5.)

Pursuant to CCJ policies, an inmate can request services from the medical provider by placing a completed "health services request form" in a mailbox in his or her housing pod. (*Id.* ¶ 6.) The medical records reflect that Plaintiff submitted 53 forms requesting medical services during the period he was held at the CCJ. (*Id.* ¶ 11.)

Within a day or two of the submission of almost every medical request form, the medical department noted receipt of the form and/or the provision of actual services. (*Id.* ¶ 12.) The records demonstrate that during the period of time Plaintiff claimed to have blood in his stools, he submitted four request forms, which the medical department acknowledged receiving. (*Id.* ¶ 13.)

*Ralph Dubois* [2]

During the time relevant to Plaintiff's allegations, Defendant Ralph Dubois worked as a sergeant at the CCJ. (*Id.* ¶ 14.) At some point, Defendant Dubois became aware that Plaintiff had claimed that he had blood in his stools. (*Id.* ¶ 15.) In response to a discussion with Plaintiff, Defendant Dubois contacted the duty nurse to determine whether the corrections officers should check Plaintiff's stools. (*Id.* ¶ 16.) The duty nurse advised Defendant Dubois that the medical department was aware of Plaintiff's claim, that the medical staff was monitoring the condition through a log they asked Plaintiff to keep and place in the medical mail box in his housing unit, and that the jail staff was not required to monitor the condition. (*Id.* ¶¶ 17, 18.) Defendant Dubois then informed Plaintiff that the medical department would continue to monitor his condition. (*Id.* ¶ 19.) Defendant Dubois had no other direct involvement with Plaintiff's claimed medical issues. (*Id.* ¶ 20.)

---

[2]  The Plaintiff incorrectly identified Ralph Dubois as "Ralph Duboise."

### *Joshua Pickreign* [3]

Defendant Joshua Pickreign was employed as a sergeant at the CCJ during Plaintiff's incarceration. (*Id.* ¶ 24.) Prior to Plaintiff's admission to MMC in October 2014, Defendant Pickreign was aware that Plaintiff had reported various medical issues, but he was not aware of whether Plaintiff suffered any serious medical conditions. (*Id.* ¶ 25.) At one point during Plaintiff's incarceration, Defendant Pickreign contacted the medical department to confirm that medical personnel were aware of Plaintiff's claimed medical issues. (*Id.* ¶ 26.)

### *Donald Young*

Defendant Donald Young was also employed as a sergeant at the CCJ. (*Id.* ¶ 32.) Defendant Young first became aware that Plaintiff claimed to have certain medical conditions when he was advised that biohazard bags were needed for Plaintiff's medical issues. (*Id.* ¶ 33.) Defendant Young was not aware of the specific nature of Plaintiff's claimed medical conditions. (*Id.* ¶ 34.) To the best of Defendant Young's knowledge, any request forms that Plaintiff had completed to receive medical care while at the jail were forwarded to and handled by the medical department. (*Id.* ¶ 35.)

### *Daniel Pelletier* [4]

Defendant Daniel Pelletier, a corrections officer at the jail, was aware of Plaintiff's complaints regarding his medical condition. (*Id.* ¶ 38.) To the best of Defendant Pelletier's knowledge, the jail's medical provider treated Plaintiff for his medical conditions throughout his incarceration. (*Id.* ¶ 39.)

---

[3] The Plaintiff incorrectly identified Joshua Pickreign as "Joshua Pickering."

[4] The Plaintiff incorrectly identified Daniel Pelletier as "David Pelletier."

*Wayne Pike*

Defendant Wayne Pike was employed as a captain at the CCJ during the time relevant to Plaintiff's complaints. (*Id.* ¶ 41.) Defendant Pike was responsible for responding to grievance appeals filed by inmates. (*Id.* ¶ 42.) He had no direct or personal involvement regarding Plaintiff's access to medical services or in the delivery of medical services to Plaintiff. (*Id.* ¶ 43.)

A search of the jail records regarding Plaintiff revealed that the medical department responded to all grievances Plaintiff filed about his medical care. (*Id.* ¶ 44.) The records also establish that Defendant Pike responded to all of Plaintiff's appeals from the medical department's responses to his grievances, and in each case, Defendant Pike concluded that the medical department was aware of his complaints and that the medical team was addressing Plaintiff's medical concerns. (*Id.* ¶ 45.)

### C. Plaintiff's Exhibits

In the filing to which he attached his summary judgment exhibits (ECF No. 125), Plaintiff requests that the Court review and consider the evidence he produced in response to a previous motion to dismiss. (ECF Nos. 25, 26.) Additionally, Plaintiff offers a "statement" (ECF No. 125-1) that "all herein is true and correct under penalty of perjury," followed by a short description of what Plaintiff believes each attached exhibit reveals. (ECF Nos. 125-2 – 125-11.)

The exhibits consist primarily of Plaintiff's log of instances when he experienced bleeding, Plaintiff's complaints about the lack of proper pain medication, certain medical forms and records, some grievances Plaintiff filed, and several other documents Plaintiff contends demonstrate Defendants' knowledge of and failure to treat appropriately Plaintiff's medical conditions.

### D. Plaintiff's Spoliation Argument

In the filing to which he attached his exhibits (ECF No. 125), Plaintiff states:

9

> It has now been brought to [the] Court's attention that crucial and pertinent discovery evidence that was held by Defendants has in fact gone missing, i.e., the medical log / hot books of which would [sic] have proven the dates and times I was or was not seen by the medical providers at said facility. Plaintiff maintains that these log books and hot books would have shown that the Defendants have in fact lied about when I was seen at medical. Now because these books cannot be located, this has affected my ability to refute their claims. I have proven medical records have been altered changed, etc and or just disappeared.
>
> Defendants have admitted the books did exist and now don't, which I believe is enough to deny summary judgment of all Defendants.

(ECF No. 125 at 1 – 2.) The Court previously addressed the unavailability of certain medical logs. The Court denied Plaintiff's motion to compel production of logs that Defendants represented could not be located. In its order, the Court wrote:

> Plaintiff has requested copies of certain medical log book pages. Defendant Cumberland County acknowledges that the requested medical log book pages once existed, but Defendant cannot locate all of the pages. The Court is not convinced that Defendant destroyed the documents or otherwise intentionally made the documents unavailable for production in this matter. However, in the event Plaintiff believes the unavailable documents might be pertinent to Plaintiff's response to any substantive evidence or argument that Defendant might present in this case, Plaintiff can argue to the Court that Defendant should be prevented from making the argument or presenting the evidence based on the unavailability of the documents. The Court will determine at that time whether Defendant should be foreclosed from presenting the evidence or making the particular argument.

(ECF No. 119, PageID # 1223.)

## DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'"

*Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

### B. Deliberate Indifference Standard

Plaintiff's action against the Defendants is exclusively a claim of deliberate indifference to serious medical needs. The Defendants' obligation to Plaintiff regarding medical services is governed by the Due Process Clause of the Fourteenth Amendment. Specifically, the Due Process Clause imposes on the states the "substantive obligation" not to treat prisoners in their care in a manner that reflects "deliberate indifference" toward "a substantial risk of serious harm to health," *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011), or "serious medical needs," *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 – 106 (1976)). To be actionable, a deliberate indifference claim must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011).

The objective standard evaluates the seriousness of the risk of harm to one's health. For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is serious if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991).

The subjective standard concerns the culpability of the defendant. There must be evidence that a particular defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002). In other words, the subjective standard focuses on whether the Defendants had a "purposeful intent" to neglect Plaintiff's serious medical needs. *Perry v. Roy*, 782 F.3d 73, 79 (1st Cir. 2015) (citing *Estelle,* 429 U.S. at 105). A showing of such an intent requires evidence that the alleged absence or inadequacy of treatment was intentional. *Id.* (citing *Estelle*, 429 U.S. at 105 (holding that "an inadvertent failure to provide adequate medical care" is not a constitutional violation), and *Watson*, 984 F.2d at 540 ("The courts have consistently refused ... to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.")). "The typical example of a case of deliberative indifference would be one in which treatment is denied in order to punish the inmate." *Id.* (internal quotation marks omitted). However, a showing of "wanton disregard" will

12

also raise a genuine issue for trial. *Id.* (quoting *Battista v. Clarke,* 645 F.3d 449, 453 (1st Cir. 2011)). Deliberate indifference thus must be based on much more than ordinary negligence. The First Circuit has explained:

> A finding of deliberate indifference requires more than a showing of negligence. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). A plaintiff claiming an eighth amendment violation with respect to an inmate's serious mental health or safety needs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference." *Estelle*, 429 U.S. at 106; *see also Cortes-Quinone v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988). Although this court has hesitated to find deliberate indifference to a serious need "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment," *Sires*, 834 F.2d at 13, deliberate indifference may be found where the attention received is "so clearly inadequate as to amount to a refusal to provide essential care."

*Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).

### C.     Plaintiff's Motion for Summary Judgment

Through his motion for summary judgment, Plaintiff evidently contends that the record compels a finding that Defendants acted with deliberate indifference to his medical needs. Plaintiff, however, has not provided a record to support his argument. First, in contravention of Local Rule 56, Plaintiff did not file a statement of material facts, nor did he contradict the statements filed by Defendants. In addition, Plaintiff failed to file a memorandum of law in support of a motion for summary judgment as required by Local Rule 7. The rules are designed to ensure an orderly procedure for determining a party's entitlement to summary judgment and compliance is mandatory for both represented and pro se litigants. *Doe v. Solvay Pharm., Inc.*, 350 F. Supp. 2d 257, 260 & n.3 (D. Me. 2004), *aff'd*, 153 Fed. App'x 1 (1st Cir. 2005). The Court, therefore, could deny Plaintiff's motion based on his failure to comply with the applicable rules.

13

Even if the Court were to overlook Plaintiff's non-compliance with the applicable rules, the current record, which includes various medical records and sworn testimony that establish Defendants' attention to and treatment of Plaintiff's medical conditions, precludes a finding that as a matter of law Defendants' conduct constitutes deliberate indifference to Plaintiff's medical needs. Plaintiff, therefore, is not entitled to summary judgment.

### D. Corizon Defendants' Motion for Summary Judgment

Plaintiff contends that he developed cancer because the Corizon Defendants failed to treat properly his rectal bleeding, failed to respond appropriately to his blood loss, and failed to provide him with his pain medication.

The Corizon Defendants argue they are entitled to summary judgment based largely on the treatment provided by Defendant Woodward. According to Defendants, Defendant Woodward "extensively treated Plaintiff, both before and after his cancer diagnosis, and exercised her medical judgment" in connection with Plaintiff's subjective complaints. (Corizon Defendants' Motion for Summary Judgment at 12, ECF No. 108.) As to the events prior to the emergency referral of Plaintiff to the Maine Medical Center, Defendants assert that "[t]here is no evidence that PA Woodward subjectively realized that Plaintiff had cancer or conditions more serious than those for which she provided treatment." (*Id.* at 13.) Defendants also contend the record does not support claims against Defendants Chamberland and Mageary because they did not direct the course of Plaintiff's treatment, and further argue the record does not support a claim against Defendant Corizon because it did not establish a policy responsible for any constitutional violation. (*Id.* at 13 – 15.)

14

      *a.*     *Cancer claim*

In his complaint, Plaintiff alleged Defendants caused him to develop rectal cancer because they failed to treat him for ten months. The record, however, lacks any evidence to support Plaintiff's contention that he developed cancer because of Defendants' treatment or a delay in Defendants' treatment.[5] In fact, the evidence establishes that Plaintiff declined a colonoscopy referral in August 2014. Simply stated, the record evidence would not support a finding that Defendants' alleged deliberate indifference caused Plaintiff to develop cancer.

      *b.*     *Blood loss claim*

Plaintiff's first entry in his log of rectal bleeding reflects that on September 10, 2014, Plaintiff "began bleeding little." (Plaintiff's Exhibit 2, PageID # 1254.) According to the log, the symptoms gradually worsened to the point that, by September 25, 2014, Plaintiff was passing blood regularly throughout the day. On September 26, Defendant Woodward noted that a consult was scheduled. Upon review of the lab results on October 4, 2014, Defendant Woodward referred Plaintiff to the CCJ site doctor. The next day, on October 5, 2014, Dr. Todd Tritch evaluated Plaintiff and sent him to MMC's emergency room in advance of his planned visit with the gastrointestinal consultant. At MMC, Plaintiff reported having one or two episodes of bloody stools since February 2014, with worsening symptoms since September 28, 2014.

Although Plaintiff maintains that he experienced substantial blood loss over the course of three and a half weeks, the record reflects that the period of time from when Plaintiff experienced significant bleeding and when Plaintiff was referred for emergency medical care was

---

[5] In other words, the etiology of Plaintiff's rectal cancer is neither obvious to a layperson nor the subject of a diagnosis of record. Additionally, Plaintiff's conclusory assertion is not sufficient evidence to support a non-speculative finding of causation. "When an injury is sophisticated, proof of causation generally must be established by expert testimony." *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002) (holding that the plaintiff's "failure to produce expert testimony to prove that the lapse in medication caused his stroke is therefore fatal to his deliberate indifference claim as a matter of law.").

approximately a week (September 28 through October 5). The issue is whether a fact finder could reasonably conclude that a one-week delay in the emergency referral constitutes deliberate indifference toward Plaintiff's loss of blood.[6]

Although Plaintiff asserts that the delay generated the need for significant blood transfusions, the record reflects that the blood transfusions were ordered as part of Plaintiff's chemotherapy treatment, which treatment Plaintiff received over the course of three weeks at MMC. The actual treatment Plaintiff received at MMC, as reflected by the medical records, is not itself "significant probative evidence tending to support" a finding of deliberate indifference on the part of Defendants. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 – 57 (1986). On this record, therefore, a reasonable fact finder could not conclude that through deliberate indifference, Defendants allowed Plaintiff to lose a substantial volume of his blood before ordering an emergency referral to MMC.[7]

---

[6] While a delay in treatment can support a finding of deliberate indifference, delay in and of itself is not always sufficient to generate a trialworthy issue, particularly where attention, treatment, outside consultations and diagnostic care are provided or offered. *See*, *e.g.*, *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 162 (1st Cir. 2006). The record before the Court does not include any evidence regarding the effect of the delay on Plaintiff's condition or prognosis.

[7] Plaintiff also argues that spoliation of evidence should be enough to overcome Defendants' summary judgment motions because log books have gone missing that would have enabled Plaintiff to establish when he was or was not seen.

> Under the spoliation of evidence doctrine, "a trier of fact may (but need not) infer from a party's obliteration of evidence relevant to a litigated issue that the contents of the evidence were unfavorable to the party." *Gomez v. Stop & Stop Supermarket Co.,* 670 F.3d 395, 399 (1st Cir.2012) (quoting *Testa v. Wal–Mart Stores, Inc.,* 144 F.3d 173, 177 (1st Cir.1998)) (internal quotation marks and original brackets omitted). The doctrine has two main rationales: first, "that a party who destroys a document (or permits it to be destroyed) when facing litigation, knowing the document's relevancy to issues in the case, may well do so out of a sense that the document's contents hurt his position," *Testa,* 144 F.3d at 177; and second, that imposing sanctions "serves to deter litigants from destroying relevant evidence prior to trial and to penalize a party whose misconduct creates the risk of an erroneous judgment." *Booker v. Mass. Dep't of Pub. Health,* 612 F.3d 34, 46 (1st Cir. 2010).
>
> Proponents of an inference based on spoliation must establish a two-part evidentiary foundation. *Id.* First, they must "show that the party who destroyed the [evidence] 'knew of ... the claim (that is, the litigation or the potential for litigation.'" *Id.* (quoting *Testa,* 144 F.3d at 177). Second, they must show "the [evidence]'s potential relevance to that claim." *Testa,* 144 F.3d at 177.

      *c.*     *Pain medication claim*

Plaintiff alleges Defendants denied him prescribed pain medication following his return from MMC. The record reflects, however, that upon Plaintiff's initial return to the CCJ on October 27, 2014, Defendant Woodward substituted Tylenol 3 or 4 for Vicodin because Vicodin is a Schedule 2 drug outside the scope of her practice. Defendant Woodward then referred Plaintiff to a physician to order Vicodin, which Plaintiff began receiving on October 28, 2014.[8] The record lacks an evidentiary basis to support a finding that providing Tylenol before obtaining the prescription for Vicodin from a physician the following day constitutes deliberate indifference toward Plaintiff's serious medical need.

      *d.*     *Supervisory and/or policy and custom claims*

Because the record does not support a claim based on the deliberate indifference of the individuals involved in Plaintiff's care, the record cannot support a liability claim against Defendant Corizon based on a policy or custom. *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 504 (1st Cir. 2011). Additionally, Plaintiff has failed to establish that any of the individual defendants exercised policymaking authority on behalf of Defendant Corizon. *Walden v. City of Providence, R.I.,* 596 F.3d 38, 55 (1st Cir. 2010).

---

      Additionally, "[a] key consideration in whether to impose sanctions for spoliation of evidence is the 'degree of fault of the offending party.'" *Parlin v. Cumberland Cnty.,* No. 08–cv186–P–S, 2009 WL 2998963 at *2 (D. Me. Sept. 16, 2009) (quoting *Collazo–Santiago v. Toyota Motor Corp.,* 149 F.3d 23, 29 (1st Cir. 1998)).

*Penn v. Knox Cty.*, No. 2:11-CV-00363-NT, 2013 WL 5503671, at *12 (D. Me. Sept. 30, 2013), *aff'd in part, appeal dismissed in part sub nom. Penn v. Escorsio*, 764 F.3d 102 (1st Cir. 2014). Here, Plaintiff relies exclusively on the Defendants' concession that they could not locate all of the medical log books for the period in which Plaintiff was incarcerated. Plaintiff, however, has not established that the missing log books likely contained information probative of Plaintiff's blood loss claim.

[8] Plaintiff states that he never received Tylenol 4. However, the record lacks an evidentiary basis to support a finding that the temporary provision of Tylenol 3 constitutes deliberate indifference.

### E. County Defendants' Motion for Summary Judgment

In an amended pleading, Plaintiff alleges the County Defendants failed to oversee properly the Corizon Defendants. (ECF No. No. 8.) According to Plaintiff, Defendant Pike also improperly denied Plaintiff's grievances in which Plaintiff asserted that he was not receiving prescribed pain medication after his return from MMC.[9] (ECF Nos. 33, 40.) The County Defendants argue that the record does not support a finding that they were deliberately indifferent to any serious medical conditions of which they were aware and that all of the individual County Defendants are shielded by the doctrine of qualified immunity. (County Defendants' Motion at 1, ECF No. No. 112.)

The summary judgment record does not support a finding that the County Defendants prevented or otherwise interfered with Plaintiff's access to health care at the CCJ. Moreover, because the summary judgment record does not support a finding of deliberate indifference on the part of the Corizon Defendants, Plaintiff cannot succeed on his claim that the County Defendants are responsible for failing to prevent a deprivation of his constitutional rights by the Corizon Defendants, or on his claim that he was subjected to deliberate indifference as a consequence of a county policy, custom or practice.[10] The record, therefore, does not permit a finder of fact to conclude that the County Defendants were deliberately indifferent to Plaintiff's medical needs.

---

[9] With respect to Defendant Pike, Plaintiff also arguably attempted to expand his claims to include claims under 42 U.S.C. § 1997, the Americans with Disabilities Act, the Administrative Procedures Act, the First, Fourth, and Eighth Amendments, and state negligence law. As to Plaintiff's proposed federal claims, Plaintiff's claim regarding his medical care is inherently a claim subject to the deliberate indifference standard. *Burrell v. Hampshire Cty.*, 307 F.3d 1, 7 (1st Cir. 2002). Plaintiff has not alleged facts that would support any other federal claim. In addition, there is no basis to infer that a private cause of action even exists under 42 U.S.C. § 1997. *McRorie v. Shimoda*, 795 F.2d 780, 782 (9th Cir. 1986) (citing 42 U.S.C. § 1997j). Any possible negligence claim is barred by the immunity conferred upon Defendant Pike by the Maine Tort Claims Act. *Roberts v. State*, 1999 ME 89, ¶ 10, 731 A.2d 855; *Erskine v. Comm'r of Corr.*, 682 A.2d 681, 686 (Me. 1996) (citing *Ellis v. Meade*, 887 F. Supp. 324, 331 (D. Me. 1995)); *see also Ellis*, 887 F. Supp. at 331 ("The Court is satisfied that the management and care of prisoners is more than a ministerial function. It requires the use of an officer's judgment. Accordingly, the Court concludes that such activity constitutes the carrying out of a discretionary function.").

[10] Plaintiff's claim against the County would require a showing that he suffered a constitutional injury as the result of a county-maintained custom, policy, or practice. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 – 95 (1978). There is no evidence of this kind in the record.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court deny Plaintiff's Cross-Motion for Summary Judgment (ECF No. 120); grant the Corizon Defendants' Motion for Summary Judgment (ECF No. 108); and grant the County Defendants' Motion for Summary Judgment (ECF No. 112). In addition, because this recommendation includes reference to medical information relevant to Plaintiff's claim regarding the quality of his medical care, if the Court adopts the recommendation, I recommend the Court lift the seal on the Corizon Defendants' Motion for Summary Judgment filings except as to Plaintiff's medical records (ECF No. 107-4 and 107-5). [11]

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

[11] The Corizon Defendants filed their motion for summary judgment and statement of material facts under seal (see ECF No. 107) and provided redacted versions for the public docket (see ECF No. 108). When a court considers a motion to seal, the court must be mindful that the law recognizes a presumption "of public access to judicial proceedings and records." *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013). As the First Circuit has acknowledged, however, "[t]hough the public's right to access is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." *Id.* at 59 (quoting *Siedle v. Putnam Inv., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)). In its assessment of a request to seal, a court is required to "carefully balance the presumptive public right of access against the competing interests that are at stake in a particular case." *Id.*

While Defendants understandably exercised caution before making Plaintiff's medical records available on the public docket, in the course of addressing the merits of the pending summary judgment motions, it was necessary to discuss Plaintiff's conditions and the treatments he received. Indeed, Plaintiff has described his conditions in detail in public filings. Given that Plaintiff initiated this action in which he complained about Defendants' treatment of his various medical conditions, and given that the public interest in access to judicial decisions and the record upon which the decisions are based is of "paramount" significance, *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987), the general seal of the exhibits to Defendants' motion for summary judgment is not warranted. However, in the absence of a well-supported request from a member of the public to review Plaintiff's medical records, the seal may be maintained on those records to preserve Plaintiff's privacy and to avoid the potentially considerable burden of reviewing the records in order to redact personal identifying information such as Plaintiff's date of birth and social security number. *See*, *e.g.*, *Ellis v. Lewis*, No. 5:12-CT-03122-FL, 2015 WL 5714874, at *8 (E.D.N.C. Sept. 29, 2015) (applying local rule requiring that medical records not be open to inspection and copying by any person other than the parties and their attorneys). The seal otherwise should be lifted from Defendants' motion, Defendants' statement of material facts, Defendant Woodward's declaration, Defendant Mageary's declaration, Defendant Chamberland's declaration, and the January 21, 2016, letter from Plaintiff to Mr. Lefkow.

      Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                                  /s/ John C. Nivison
                                  U.S. Magistrate Judge

Dated this 29th day of July, 2016.